[Crim. No. 314. In Bank.—October 4, 1897.]

## THE PEOPLE, Respondent, v. HENRY F. YOKUM, Appellant.

CRIMINAL LAW—HOMICIDE—SELF-DEFENSE—DISPUTED CLAIM TO LAND—EVIDENCE—INTERVIEW BETWEEN CLAIMANTS—PEACEFUL INTENTION OF DECEASED—UNARMED CONDITION—HARMLESS RULING.—Upon the trial of a defendant, accused of murder, who claimed that the homicide was in necessary self-defense, where it appeared that there was a disputed claim to land between the defendant and two other men, who went to the house of defendant to see about defendant's claim to the land, and in the interview both men lost their lives, it is proper for the prosecution, in opening its case, to introduce evidence tending to show that the intentions of the deceased persons were peaceful, and that they were unarmed when they started to the interview; and even if such evidence were not admissible then, the judgment could not be reversed merely because evidence was received at the wrong time, in the absence of a showing of special injury therefrom.

ID.—DYING DECLARATIONS—PROOF OF SENSE OF IMPENDING DEATH.—It is not essential to the admissibility of a dying declaration that the person making it should have stated expressly that he was making a dying statement, or that it was made under a sense of impending death; but it is enough if that fact be made to appear in any lawful mode.

ID.—MATTER FOR DYING STATEMENT—FOLLOWING OF DECEASED BY DEFENDANT—REQUEST NOT TO SHOOT AGAIN.—It is proper subject matter for a dying statement to declare that after the fatal shot defendant followed the deceased up a hill, and the deceased begged him not to shoot him any more, and that he was dying then.

ID.—DISPUTE AS TO CHARACTER OF LAND—IMMATERIAL EVIDENCE.—Where the land in dispute was claimed as mining ground by the deceased claimants, and as agricultural land by the defendant, the merits of the controversy between them are immaterial, and it is proper to refuse to permit the defendant to show that the land had been adjudged to be agricultural by the secretary of the interior.

ID.—EXPERT EVIDENCE—COURSE OF BULLET—REMARK OF JUDGE.—Where there had been a *post mortem* examination of the body of the deceased by two physicians, who disagreed as to the direction of the bullet when it entered the body, and as to the cause of its deflection, the issue between them being material to the inquiry as to whether the shot was fired in the position testified to by the defendant, or in that stated in the dying declaration of the deceased, upon the offer of other medical expert testimony on behalf of the defendant as to the cause of the deflection, to corroborate the claim made for the defendant as to the course of the bullet, though the inquiry was material, a remark of the judge that it seemed to him the evidence was immaterial, made without intent to influence the jury, and in connection with a reasonable limitation of the number of additional expert witnesses, and with the further correct remark that the material inquiry was to show the

direction of the bullet when it entered the body, could not have had the effect to influence the jury prejudicially.

ID.—COMPETENCY OF PHYSICIAN AS EXPERT—GUNSHOT WOUNDS—DEFLECTION OF BULLET.—A physician, as such, without a showing that he has had experience with gunshot wounds, is not an expert upon that subject; and as matter of common knowledge, no one can say as an expert that a bullet cannot be deflected in the human body without striking a bone.

ID.—LETTER AS EVIDENCE—PROVINCE OF JURY—PROOF OF MEANING NOT ADMISSIBLE.—The value of a letter as evidence is to be determined by the jury, to whom the facts concerning it may be shown, but the application of the facts to the letter is to be made by the jury; and where there is no technical language requiring interpretation, it is proper for the court to refuse to permit a witness to tell the meaning of the letter.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—IMPROPER STATEMENTS CHARGING MALICE—CONVICTION OF MANSLAUGHTER—IRREGULARITY NOT PREJUDICIAL. Misconduct of the district attorney, in making improper statements tending to show malice on the part of a defendant accused of murder, though strongly to be condemned, is not a prejudicial irregularity, where the jury found that there was no malice by finding a verdict of manslaughter, as the jury could not have been influenced by such misconduct unfavorably to the defendant and may have been influenced the other way.

ID.—INSTRUCTIONS—SELF-DEFENSE—DUTY TO DESIST FROM VIOLENCE TO DISABLED ASSAILANT—DOCTRINE OF APPEARANCES—CONSTRUCTION OF CHARGE. An instruction to the effect that while a person may repel force by force in defense of person, habitation, or property against one or many who manifestly intend or endeavor, by violence or surprise, to commit a known felony on either, yet when the person assailed has rendered his assailant or assailants harmless, and incapable of doing any further injury, and is no longer in danger, he must desist from further acts of violence, and if he continues the force, and kills him or them, it is murder and not self-defense, is not subject to the objection that it omits the doctrine of appearances, where, in the preceding and following instructions the jury were repeatedly told that the danger which would justify the homicide might be real or apparent, and that the jury were not to consider whether the defendant was in actual peril, but only whether the indications were such as to induce defendant, as a reasonable man, to believe that he was in peril or danger, and that if he so believed reasonably, and fired at deceased under such belief, though it should appear that he was not armed, they should acquit the defendant; and such instructions as to apparent danger are not to be deemed inconsistent with the instruction that defendant must desist from further violence to a disabled assailant, but are to be considered as explanatory of it, and as applying to the conflict in all of its stages.

APPEAL from a judgment of the Superior Court of Butte County.   John C. Gray, Judge.

The facts are stated in the opinion of the court.

H. V. Reardon, and W. H. Layson, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

TEMPLE, J.—The defendant was charged with the murder of one Albert Mason, at Butte county, on the 14th of December, 1895. He was convicted of the crime of manslaughter, and this appeal was taken from the judgment and from an order refusing a new trial. Appellant complains of certain rulings, and of some instructions.

The deceased and one Frank Ballew claimed certain land as a part of their alleged mining claim. The defendant had contracted to purchase a tract which included the same land from the Central Pacific Railroad Company.

On the morning of December 14, 1895, the defendant discovered a person chopping wood upon the land, who claimed that he was authorized so to do by Frank Ballew. Defendant replied that Frank Ballew did not own the land, but he, Yokum, did, and forbade the cutting of oak trees. Ballew and Mason were informed of this assertion of title, and went to the house of defendant to see about it. In the interview both were killed by the defendant. It is contended that the homicide was justifiable because in necessary self-defense.

The first point has reference to the admission of evidence for the prosecution in opening its case, to the effect that when Ballew and Mason started to interview defendant they were unarmed. The main contention is, that it was not admissible then. But some special injury must be shown to justify the reversal of a case merely because evidence was received at the wrong time. The defense made by the defendant, and the circumstances of the killing, afterward shown, justified the admission of the evidence. But since both lost their lives in the interview it was proper for the prosecution to introduce evidence tending to show that their intentions were peaceful.

The next contention is, that the dying statement of Albert Mason was improperly received because it was not shown that it was made under a sense of impending death. The written state-

ment does not contain an assertion to that effect, and Miss Coleman, who wrote it, testified that nothing was said in her hearing which indicated that Mason supposed he was making a dying statement. But it was not necessary that the statement should be in writing, or, whether it was or not, that it should show that it was made under a sense of impending death. It is enough if that fact be made to appear in any lawful mode. (1 Greenleaf on Evidence, 158; *People v. Ybarra,* 17 Cal. 166.)

The fact was abundantly shown in this case. Miss Nora Coleman, the young lady who wrote the statement, testified that deceased came to her mother's house wounded, and "he said that his time was short; that he did not have long to live; that a doctor could do him no good. About three-fourths of an hour afterward I wrote down some statements made by him."

Mrs. Carey testified: "I went there about 3 o'clock. I saw Albert Mason there on the bed. I went into the room. He told me then that he, Yokum, had shot him all to pieces; that he believed he was going to die, and wanted me to have the folks come in and bid him good-bye, which I did. They came in and bade him good-bye. This was just before he made the dying declaration."

Sarah Hintz and William Hooper gave similar testimony.

Objection is made to a statement of the deceased to the effect that after the fatal shot defendant followed him up the hill, and the deceased begged him not to shoot him any more, that he was dying then—on the ground that the statement was not proper matter for a dying statement. But I cannot agree with counsel in this. The subject matter of the declaration was proper within the strictest rules applicable to the subject.

There was no error in refusing to permit the defendant to show that the land in dispute had been adjudged to be agricultural by the secretary of the interior. That each party claimed the land was abundantly proven. The merits of the controversy were immaterial.

Appellant complains bitterly of a remark of the court in regard to the introduction of the testimony of medical experts. There had been a post mortem examination by Doctors Rodley and Mack. Both were witnesses at the trial. They agreed that the bullet struck Mason in the back, about two and one-half inches to

the left and opposite the junction of the second and third lumbar vertebra, that it passed through the kidneys and was deflected from its course, passing out of the body to the right of the sternum in the fifth or sixth intercostal space. They disagreed, however, as to the direction of the bullet in entering the body. Dr. Rodley thought the course of the bullet upon entering the body was slightly upward, and that had it not been deflected it would have passed out to the left of the median line. Dr. Mack said the course upon entering the body was slightly downward, and that had the course of the bullet not been deflected the exit would have been on the right side. He thought the deflection was caused by striking the fifth lumbar vertebra. The issue between the medical witnesses was material. A question was raised as to whether the rifle shot was fired when the defendant was standing upon his porch, as he testified, while the deceased was on the ground immediately in front, or after the deceased had taken flight up the trail, as stated in the dying declaration.

After the two medical witnesses who made the post mortem examination had testified, the defense called other medical witnesses and endeavored to show that the deflection could only have been caused by striking a bone. This would, of course, tend to show that Dr. Mack was right and Dr. Rodley was wrong, and would be favorable to the defendant. The judge remarked that it seemed to him that the evidence was immaterial, and he would limit them to two expert witnesses. In any view the limitation cannot be said to be unreasonable. The complaint has reference mostly to the remark. While I think the inquiry was quite material, I do not think the remark, made entirely without intent to influence the jury, could have had that effect. Especially when in the remark itself the judge pointedly and correctly stated in what the materiality of the inquiry consisted, to wit, to show the direction of the bullet when it entered the body of the deceased.

It may well be doubted if the evidence itself was competent. A physician, as such, and without a showing that he has had experience with gun-shot wounds, is not an expert upon the subject, and then it was not shown that any expert could form an opinion as to whether the bullet might not have been deflected without striking a bone. I think we may say as matter of common

knowledge that no one could say that, and such was the opinion of one of the experts, Dr. Cleaveland.

I do not find anything to criticise in the remark of the judge with reference to the letter offered by the defense. The letter was received in evidence, and its value as evidence was to be determined by the jury. There was no technical language requiring interpretation, and the court did not err in refusing to permit the witness to tell its meaning. The facts could be shown and its application made by the jury.

Appellant complains of certain conduct on the part of the district attorney at the trial which he thinks improperly prejudiced his case. The conduct of that officer in regard to the matter cannot be too strongly condemned. It is difficult to understand how anyone having any regard for fair dealing could have been guilty of such conduct. But I do not think the jury could have been influenced by it unfavorably to the defendant. The effect was probably the other way, and perhaps this may account for a verdict of manslaughter when it would seem that the evidence showed either that a murder had been committed or that the homicide was in self-defense. The statements improperly made tended to show malice upon the part of the defendant. The jury found that there was no malice by finding a verdict of manslaughter. It is not necessary to say what our decision would have been had the conviction been for murder.

The chief reliance of counsel for a reversal is doubtless upon their exceptions to instruction XX given by the court. It reads as follows: "I further instruct you that, while a person may repel force by force in defense of his person, habitation, or property against one or many who manifestly intend or endeavor, by violence or surprise, to commit a known felony on either, you must understand that when the person so assailed, or about to be assailed, has so far rendered his assailant or assailants harmless— made him or them incapable of doing any further injury—and that he is no longer in danger, he must desist from further acts of violence, and if he continues the force and kills him or them it is murder and not self-defense."

It is agreed that the rifle shot was the immediate cause of Mason's death. He had been previously wounded by a discharge from the shot-gun, and his right arm shattered. The jury, it is

contended, might believe he had been disabled by the first wound to such an extent as to relieve defendant from actual danger from any assault from him.   And this instruction, it is contended, told the jury that in such event defendant was not justified in firing the rifle shot, whether he knew the fact that Mason was so disabled or not.   It omits, it is said, the doctrine of appearances.

The Penal Code, sections 197 and 198, provides that a person may sometimes, when in imminent danger of receiving great bodily injury, lawfully take the life of an assailant.   Section 198 has been construed as declaring that a person shall have the benefit of this defense when the circumstances are sufficient to excite the fears of a reasonable person, and the party killing has acted under the influence of such fears alone.   For the purpose of enabling him to make this defense he is then deemed to be in danger.

The danger which will justify a person in repelling force by force was so defined by the trial court in this case.   In several instructions preceding the twentieth the jury were told that the danger might be real or apparent, and the same thing was afterward several times repeated.   In the twenty-ninth they were told the danger need not be actual, and in the thirty-second and thirty-third the court gave specific instructions applicable to the very exigency to which the twentieth is understood to apply.   They are as follows: "The jury are not to consider whether or not H. F. Yokum was, when he fired on Mason, in actual peril, but only to consider whether the indications were such as to induce defendant Yokum, as a reasonable man, in believing he was in peril or danger."

"If you believe that he believed reasonably that he was in peril or danger, and that he fired at deceased Mason under such belief, though it should appear that Mason was not armed, you should acquit the defendant."

These instructions do not contradict the twentieth, but may be considered explanatory of it.

But the instructions upon the character of the danger which will justify the killing naturally apply to the conflict in all its stages, and the jury could not have understood them differently.

The judgment and order are affirmed.

McFarland, J., Harrison, J., Van Fleet, J., Garoutte, J., and Henshaw, J., concurred.