## GABE HAWKINS v. UNITED STATES.

No. A-104.    Opinion Filed April 26, 1910:

(108 Pac. 561.)

1. **EVIDENCE—Res Gestae—Declaration of Deceased.** Upon a trial for murder, a declaration made by the deceased, clearly without premeditation or design, not more than half a minute after the shooting, upon the spot where the shooting occurred, and which declaration tended to explain the main fact, namely, the circumstances of the shooting, is properly a part of the res gestae and is admissible.

2. **HOMICIDE—Appeal—Harmless Error—Admission of Evidence Without Predicate.** Where a dying declaration is admitted in evidence before a proper predicate therefor is laid, but by evidence subsequently adduced the declaration is shown to be admissible, the error in admitting the declaration without requiring the predicate proof to be first made is harmless.

3. **HOMICIDE—Evidence — Dying Declarations — Predicate for.** Proof that the deceased was shot one afternoon and died about eight or nine o'clock the following morning; that his wound was intensely painful and necessarily fatal; that he was unable to be moved from the house in which he was shot; and that he stated that he was going to die; shows a conviction in deceased's mind that death was impending, and is a sufficient predicate for the admission of his dying declaration.

4. **SAME—Sense of Impending Death—Question for Court.** Whether a purported dying declaration was made under a sense of impending death is a question solely for the court in so far as it determines the admissibility of the declaration in evidence.

5. **SAME—Admissibility—Preliminary Proof—Procedure.** When a dying declaration is offered in evidence the court should require the necessary preliminary proof to be first made to the court and in the absence of the jury. If it is made and is sufficient,

then both the preliminary proof and the declaration should be, given anew before the jury. If it is not sufficient, neither the preliminary proof nor the declaration should be given to the jury.

6.    EVIDENCE—Testimony at Former Trial—Admissibility. Before the testimony of a witness at a former trial may be proved as secondary evidence against a defendant in the final trial, it must first be proved that such former trial was had, that the witness was sworn and testified, that the defendant was present and had opportunity for cross-examination, and that the witness has since died, become insane, left the state, that he is sick and unable to testify, or that his whereabouts cannot with due diligence be ascertained.

7.    TRIAL—Waiver of Objection to Evidence—Introduction of Counter Evidence. Where incompetent and injurious testimony is admitted over the objection of the defendant, the latter does not waive his objection by the introduction of counter-evidence, even though such counter-evidence would not have been competent but for the admission of the incompetent evidence sought to be counteracted by it.

8.    WITNESSES—Competency—Conviction of Crime. Under the law in force in the Indian Territory prior to statehood, record proof of the conviction of a witness of an infamous crime, rendered such witness disqualified to testify except in his own behalf; but proof of such fact by the witness's admission went only to his credibility.

9.    SAME—Testimony Antedating Conviction. Under the law in force in the Indian Territory prior to statehood, the deposition or former testimony of a witness qualified when he gave it, but subsequently disqualified by conviction of an infamous crime, cannot after such conviction be admitted over objection, upon the theory that the witness must be competent at the time his testimony is offered.

10    HOMICIDE—Murder—Sufficiency of Evidence—Burden of Proof. Under Section 863, of Ind. Ter. Stat. 1899, to make a prima facie case of murder the prosecution is required to establish only two facts, namely, the death of the deceased, and the fact that he was killed by the defendant. If those two facts are established without disclosing facts sufficient to raise a reasonable doubt of the degree of the homicide or of the defendant's justification or excuse, then the burden shifts to the defendant to introduce sufficient evidence to engender a reasonable doubt as to the degree of the offense or as to whether he was justifiable or excusable.

11.    HOMICIDE — Murder—Instructions—Self-Defense. Instructions upon self-defense in a trial for murder which tell the jury that

it must appear from the evidence that the defendant was not the aggressor before the plea of self-defense can avail him, and that if they believe certain facts from the evidence, then they should acquit the defendant as having acted justifiably; and which nowhere tell the jury that if, upon a consideration of all the evidence they entertain a reasonable doubt as to whether the defendant acted in his real or apparent necessary self-defense, they should acquit, are disapproved.

(Syllabus by the Court.)

*Appeal from District Court, Wagoner County; John H. King, Judge.*

The plaintiff in error, Gabe Hawkins, was convicted of the crime of murder, and his punishment assessed at imprisonment in the state penitentiary at hard labor for and during the term of his life. He filed a motion for a new trial, which was overruled, and he appeals. Reversed and remanded.

*Cook & de Graffenreid,* for plaintiff in error. On question of *res gestae: Price v. State,* 1 Okla. Cr. 358. On admissibility of testimony of witness subsequently convicted of infamous crime: *U. S. v. Angell,* 11 Fed. 34; *West v. Louisiana,* 104 U. S. 258; *Motes v. U. S.,* 178 U. S. 44; *Mallette v. North Carolina,* 181 U. S. 590; *Kring v. Missouri,* 107 U. S. 222; *State ex rel. v. Edwards,* 33 South. 209; *People ex rel. v. Johnson,* 90 N. Y. Supp. 134; *People v. Cox,* 73 N. Y. Supp. 774; *State v. Ardain,* 24 South. 802; *In re Murphy,* 87 Fed. 549; *Childers v. State,* 30 Tex. Crim. App. 160; *Cline v. State,* 36 Tex. Crim. App. 320; *State v. Houser,* 26 Mo. 431. On instructions on law of self-defense: *Watkins v. U. S.,* 1 Ind. Ter. 364.

*Chas. West,* Atty. Gen., *Chas. L. Moore,* Asst. Atty. Gen., and *S. M. Rutherford,* for the State.—On question of *res gestae: Carr v. State,* 43 Ark. 99; *Johnson v. State,* 8 Wyo. 494; *State v. Morrison,* 64 Kan. 669; *State v. Robinson,* 52 La. 541; *Lumbright v. State,* 34 Fla. 564. On admissibility of depositions of witness absent from state: *Shackleford v. State,* 33 Ark. 539; *Hurley v. State,* 29 Ark. 17; *Griffith v. State,* 37 Ark. 324; *Dolan v. State,* 40 Ark. 454; *Thompson v. State,* 105 Ala. 17. On instructions on law of self-defense: *Dolan v. State,* 40 Ark.

454; *State v. Underwood,* 57 Mo. 40; *Irwin v. State,* 29 Ohio St. 186; *State v. Reams,* 34 Minn. 18; *Smurr v. State,* 105 Ind. 125; *State v. Cobb,* 65 S. C. 324; *Jackson v. State,* 77 Ala. 18; *Isaacs v. State,* 25 Tex. 174.

RICHARDSON, JUDGE. On the 4th day of October, 1905, the plaintiff in error, Gabe Hawkins, hereinafter designated as the defendant, was indicted in the United States Court for the Western District of the Indian Territory at Muskogee for the murder of one Sanford Daniels, alleged to have been committed in that district on the 30th day of April, 1905. The cause was continued from time to time until the admission of Oklahoma into the Union, after which by proper order of the District Court of Muskogee County it was transferred for trial to the District Court of Wagoner County, upon a showing that the offense, if any, was committed in the latter county. The cause was tried at the October, 1908, term of the court, and resulted in a verdict finding the defendant guilty of murder without capital punishment.

The defendant admitted the killing, but pleaded self-defense as a justification. The homicide was committed in a house owned by R. B. Daniels, the deceased's father, and occupied by one Dora Smith, a tenant. Just prior to the killing the said R. B. Daniels and Warrior Hawkins, a brother of the defendant, had a difficulty on these premises, in which no weapons were used and neither party was hurt. Neither the deceased nor the defendant participated in this difficulty, the defendant not being present at the time. The state contended that when the defendant, who was about two blocks from the scene of the trouble, heard of the difficulty he announced his intention to "go down and settle that squabble," and that he then proceeded to the house carrying his pistol in his hand; that the deceased, who was on the porch when the defendant arrived, went into the house upon seeing the defendant coming up armed; that the defendant immediately cocked his pistol and made a demonstration as if to shoot through the door, when those present told him not to shoot in the house

because he might hit the deceased; that thereupon the defendant put his shoulder against the door, broke it open, and deliberately shot and killed the deceased, who was standing in the room unarmed.

The defendant contended that he went to the house to get his brother and take him home; that he did not have his pistol in his hand; that he stepped upon the porch, and, the door being open, he saw the deceased in the room; that when the deceased saw him, he drew a pistol and said, "Gabriel, I am going to kill you;" and thereupon leveled the pistol on the defendant, whereupon the defendant drew his pistol and shot the deceased.

A considerable crowd was present at the time of the shooting; and on the trial the contention of each party was supported by the testimony of several witnesses.

1. In response to questions propounded by the state, and over the objection of the defendant, the witness, R. B. Daniels, testified that the deceased told him immediately after the shooting that he, the deceased, was unarmed. In connection with this statement the witness testified that at the time the shot was fired he was about seven feet from the corner of the room in which the shooting occurred; that he ran into the room at once, that some one was then picking the deceased up from the floor where he had fallen, and that the statement was made by the deceased at that time and under those circumstances. The defendant saved an exception to the action of the court in admitting this testimony, and he assigns it as error here.

The record shows that this declaration was made not more than half a minute after the shooting and upon the very spot where the shooting occurred; the time when and the circumstances under which it was made clearly indicate that it was made wholly without premeditation or design, and could not have been the result of deliberation; it tended to explain the main fact, which was the circumstances of the shooting, and it followed immediately upon it. It was therefore properly a part of the *res gestae*, and was admissible. *Price v. State,* 1 Okla. Cr. 358, 98 Pac. 447; *Com. v. Hackett,* 2 Allen (Mass.) 136;

*Mitchum v. State,* 11 Ga. 615; *State v. Garrand,* 5 Or. 217; *State v. Ah Loi,,* 5 Nev. 99; *State v. McDaniel,* 68 S. C. 304, ·47 S. E. 384; *Com. v. Wernlz,* 161 Pa. St. 591, 29 Atl. 272.

2. The witness R. B. Daniels also testified that the deceased made a ·dying declaration in which he said that he was unarmed at the time of the shooting, and that he did not know why the defendant shot him unless it was on account of some old grudge. The defendant objected to this testimony for the reason that the proper predicate for its introduction had not been laid.

The only predicate laid at the time this testimony was given was the fact that the deceased had been shot, and that he made the positive statement that he was going to die. By evidence subsequently adduced, however, it was shown that the deceased was shot one afternoon, and died about eight or nine o'clock the following morning; that he was shot in the stomach a little to the left of the meridian line, the ball ranging downward, backward and to the right; that the wound was intensely painful and necessarily fatal, and, that the deceased until he died was unable to be moved from the room in which he was shot. All ,of these facts considered together in our opinion are sufficient to show a conviction in deceased's mind that death was impending, and thus to make the dying declaration competent. See leading case of *Rex v. Woodcock,* 1 Leach C. C. 503. Also *Anthony v. ˙State,* Meigs (Tenn.) 265, 33 Am. Dec. 143; *Reg. v. Perkins,* 9 Car. & P. 395, ·2 Moody, C. C. 135; *State v. Phillips,* 118 Iowa, 660, 92 N. W. 876; *Mattox v. United States,* 146 U. ·S. 140; *Fogg v. State* (Ark.) 99 S. W. 537; *Com. v. Hargis* (Ky.). 99 S. W. 348; *People v. Dobbins,* 138 Cal. 694, 72 Pac. 339; *People v. Lem Deo,* 132 Cal. 199, 64 Pac. 265; *People v. Yokum,* 118 Cal. 437, 50 Pac. 686; *Com. v. Brewer,* 164 Mass. 577, 42 N. E. 92; *People v. Smith,* 172 N. Y. 210, 64 N. E. 814.

As a matter of practice it is much better to require the state to make the full preliminary proof necessary to establish the competency and ·admissibility of the·-dying declaration in the absence of the.jury and before the declaration is given in their hearing;

but where that is not done, and a consideration of all the evidence in the case shows the dying declaration to be competent and admissible, the error, if any, will be treated as harmless. In such case, however, the ever present possibility of the state's ultimate failure to make the predicate proof, and the serious injury to the defendant resulting from the consequently erroneous admission of the declaration, constitute a risk which the trial court should never take. Whether a purported dying declaration was made under a solemn sense of impending death is a question solely for the court in so far as it determines the admissibility of the declaration in evidence; and when that stage of the proceeding is reached, the court should have the jury retire, and require the state to make the necessary preliminary proof to the court before proceeding further in the presence of the jury. If such proof is made and is sufficient, then the jury should be recalled, and both the preliminary evidence and the declaration should be given before them. If the preliminary proof is not sufficient, neither the declaration nor any part of the preliminary evidence, unless the latter is competent for some other purpose, should be given to the jury at all.

3. The state offered in evidence, and the court admitted over the defendant's objection, a writing purporting to be the testimony of one John Adams given before the United States Commissioner in the defendant's examining trial. It appears from the statement of the attorneys for the prosecution, made to the court and incorporated into the record, that at the time of offering this writing the witness Adams was serving a life term of imprisonment in the federal penitentiary at Fort Leavenworth, Kansas, under a conviction for the crime of murder; this was admitted by the defendant to be true. It further appears, though only from the statement of the state's attorneys, that a subpoena for the witness was issued, delivered to the sheriff for service and returned not served; that at the instance of the county attorney the Governor of Oklahoma made a request for the removal of the prisoner from the penitentiary to

3 Cr.—42

Wagoner County for the purpose of testifying in this case, and that the penitentiary authorities refused to permit his removal. The state read the writing to the jury, and the defendant excepted to the ruling of the court admitting it in evidence.

The statements contained in this writing were very damaging to the defendant. While the length of the document forbids its reproduction here in full, yet the following constituted a portion of it:

"I am a citizen. I know Warrior and Gabriel Hawkins and Sanford Daniels. Was in town day Sanford was shot. Went to town about 2 o'clock. Saw Warrior and Gabriel by Tom Lewis's. They were in a buggy. Saw them at Dora Smith's place twice. I was in house when Sanford was shot, in the room where Sanford was shot. Saw Sanford when he came. He first came up and stayed a while and then went back. While he was gone Warrior and Bob Daniels had a fight. Then 20 minutes after Sanford rode back up there. He went in the house. I went in behind Sanford and shut the door. Gabriel shoved the door open and shot Sanford. Sanford was next to middle door. Gabriel shoved open the south room door. Sanford was standing up when Gabriel shot him—doing nothing. I was two feet from Sanford. Sanford had nothing in his hand. I was east of him. When Sanford was shot he eased down by the side of the wall. Said he was shot. Gabriel asked who shot Sanford. I told him he shot Sanford and he ran away. I said 'You shot him.' I saw the pistol in his hand. Saw his pistol when he fired at Sanford. It was two or three feet from Sanford. Warrior was out-doors. I did not see Warrior after the shooting. I did not see Warrior with any gun."

The admission of this writing was error. We pass for the present the question of the competency of the witness, John Adams, had he been produced in person to testify against the defendant upon this trial; and reserve for investigation further on the admissibility of the testimony of an absent witness given in a former trial of the same cause. Answer both of those questions in the affirmative, and the admission of this writing was still patent error. In the first place this writing does not prove itself. It was not proved by a syllable of testimony from a single witness. There was no evidence other than

the writing itself showing that an examining trial was ever had in this case; that John Adams ever testified as a witness at such examining trial, if there was one; that he was sworn, if he did testify; or that the defendant was present and had opportunity for cross-examination. Proof of each and every one of these matters from the mouth of a living witness, present and testifying from the witness stand, confronting the defendant and subject to his cross-examination, was an indispensable prerequisite to the admission of this testimony under any phase of the case. *Carpenter v. State,* 58 Ark. 283; *Wilkins v. State,* 68 Ark. 441; *Dolan v. State,* 40 Ark. 454.

The defendant, for the purpose of counteracting the effect of the purported testimony of the witness Adams, introduced without objection on the part of the state a contradictory statement proved to have been made in writing by Adams prior to the alleged examining trial. Adams' purported testimony taken at the alleged examining trial shows that he was there interrogated about this contradictory statement, the time and place of his making it being stated in the questions and that Adams denied making the same. And the state contends that by introducing this statement the defendant waived any objection previously made to the admission of Adams' testimony. We cannot agree to this contention. When incompetent evidence is introduced against the defendant and over his objection, he has the right to minimize its injurious effect by any competent counterevidence which he may have, and by doing so he does not waive his objection previously made; and that is true though such counter-evidence would not have been competent, but for the admission of the incompetent evidence sought to be counteracted by it. The error of the court in admitting in evidence the written statement of Adams' purported testimony was not waived or cured by the introduction of the alleged contradictory statement, and therefore necessitates a new trial of this cause.

The probability that upon another trial proper proof may be made of the facts just pointed out as a prerequisite in any case to the admission of this writing, necessitates the considera-

tion of another reason urged by the defendant both here and below why the writing is inadmissible; and that is that its admission is in violation of the sixth amendment to the federal Constitution providing that in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him.

This homicide was committed and this indictment was found in the Indian Territory prior to the admission of Oklahoma into the Union. The law as it existed in that territory, therefore, must determine this question. Congress, by Act of May 2, 1890 (26 U. S. Stat. L., c. 182, p. 81), put in force in the Indian Territory so far as applicable certain general laws of the State of Arkansas contained in Mansfield's Digest, among which was chapter 20, adopting the common law; chapter 59, entitled "Evidence;" chapter 45, entitled "Criminal Law;" and chapter 46, entitled "Criminal Procedure." It has been held by the Court of Appeals in the Indian Territory, the United States Circuit Court of Appeals for the Eighth Circuit, and the Supreme Court of the United States, that in adopting and putting in force in the Indian Territory these general laws of the State of Arkansas, the constructions previously placed upon those laws by the Supreme Court of Arkansas were also adopted. Under the decisions of the Supreme Court of Arkansas, where the defendant has been confronted with a witness in a former trial of the same cause, whether before a coroner or justice of the peace sitting as an examining magistrate, or upon an application for bail, or upon a trial in the circuit court, and where the witness testified under oath, and an opportunity for cross-examination was afforded the defendant, the testimony given by such witness on such former trial may be proved in the final trial as secondary evidence, if it is first satisfactorily proven that the witness has since died, become insane, left the state, or that his whereabouts cannot with due diligence be ascertained, or that he is sick and unable to testify. *Hurley v. State,* 29 Ark. 17; *Shackelford v. State,* 33 Ark. 539; *Dolan v. State,* 40 Ark. 454; *Pope v. State,* 22 Ark. 372; *Vaughan v. State,* 58

Ark. 353; *McNamara v. State,* 60 Ark. 400; *Sneed v. State,* 47 Ark. 180. And it is held by the court that the admission of such evidence under such circumstances is not violative of section 10, of article 2 of the Constitution of Arkansas, which provides that the defendant shall have the right to be confronted with the witnesses against him.

The Supreme Court of the United States has never passed upon the exact question presented by this record. It sustained such a procedure as not violative of the sixth amendment to the federal Constitution where it was shown that the witness had died since giving his former testimony. *Mattox v. United States,* 156 U. S. 237, 39 L. Ed. 409. And in *Reynolds v. United States,* 98 U. S. 145, it held that if the witness is absent by the act or procurement of the defendant, his former testimony may be given. It held in *Motes v. United States,* 178 U. S. 458, that where the absent witness was in the corridor of the court house within the hour before he was called, it appearing that his absence was due to the negligence of the prosecution, and not to the suggestion, connivance or procurement of the accused, the former testimony of the witness was inadmissible. Surely that would be the rule in any court.

The government of the Indian Territory being wholly federal, and the sixth amendment to the federal Constitution being a limitation upon the federal government and effective in the Indian Territory, if the decisions of the Supreme Court of the United States could be held to have so construed that amendment as to exclude the former testimony of a witness permanently absent from the territory and who could not attend upon the court if he would, such construction would of course be conclusive upon us in this case; for Congress could no more put in force in the Indian Territory the law of another state, valid in the state but violative of the federal Constitution in the territory, than it could originally enact such a law for the Indian Territory. But we cannot find where the Supreme Court has so held; and in our opinion reason and principle and the weight of authority require a contrary holding. See Wigmore on Evi-

dence, Vol. II, Chap. XLV, where the subject is ably and exhaustively treated, and to which we give our sanction.

If, subsequent to giving his testimony in the examining trial, the witness John Adams was convicted of the crime of murder and sentenced to the penitentiary, then under the law in force in the Indian Territory and preserved by the Enabling Act and our Constitution as applicable to pending cases there, upon proof of that fact by the production of the record of his conviction or by certified copy thereof, the witness would be disqualified to testify in this case. *Bise v. United States,* 5 Ind. Ter. 602; *Werner v. State,* 49 Ark. 122; *Ranson v. State,* 49 Ark. 176, 4 S. W. 658. Under the decisions in Arkansas and the Indian Territory, however, such conviction for the purpose of establishing the incompetency of the witness can be proved only by the record or a certified copy thereof; and if the conviction is shown by the oral admission of the witness himself upon his examination, and not by the record, then it does not disqualify the witness but goes only to his credibility. *Bise v. U. S., supra.*

It is true that the law of this state in regard to the qualifications of witnesses is different; under the law in force in the Territory of Oklahoma, and by the Constitution extended over and put in force in the whole of the State of Oklahoma, no person is disqualified as a witness by reason of his conviction for any crime except perjury; such conviction, if the offense involves moral turpitude, goes only to the credibility of the witness. It is also true that a law changing the qualifications of witnesses is not *ex post facto* as to the offenses committed prior to its passage. *Hopt v. Utah,* 110 U. S. 574, 28 L. Ed. 262. But these matters are not necessary to be considered here for the reason that under the Act of Congress of March 4, 1907 (34 U. S. Stat. L. 1287), amending section 20 of the Enabling Act, the terms of which were accepted by section 28 of the Schedule of the Constitution, there has been and could have been no change in the law with respect to offenses committed in the Indian Territory before statehood. The defendant in such case is to be tried under the law as it existed in the Indian Terri-

tory, and he neither gains nor loses any advantage by the change in the form of government or in the code of laws.

It was also the law in the Indian Territory that a defendant against whom the former testimony of ˌa now absent or deceased witness is offered, may make to the introduction of such testimony every objection which he could make if the witness were present and personally testifying; and if the witness subsequent to the giving of his former testimony has been convicted of an infamous crime, and that fact is properly proved, his former testimony cannot be introduced over the objection of the adverse party, the theory being that the witness must be competent at the time his testimony is offered. *Redd v. State,* 65 Ark. 475; *St. L. I. M. & S. Ry. Co. v. Harper,* 50 Ark. 157, 6 S. W. 720. The majority of the better considered cases, however, hold the contrary, and Mr. Wigmore lends the weight of his opinion to the latter view, saying, "The time of the witness's testifying is here the time of the deposition or former testimony, his qualifications then to speak the truth are alone concerned." Wigmore on Evidence, Vol. II, section 1410. And in some jurisdictions the very fact of the witness' subsequent conviction and therefore disqualification is of itself held to warrant the admission of his former testimony given when no such disqualification existed. The rule in the Indian Territory, however, was as we have stated it, and we have no power to change it.

4. The court instructed the jury over the objection of the defendant that, "Before the plea of self-defense will avail the defendant upon trial, it must appear from the evidence that he was not the aggressor, and that he used all reasonable means in his power, consistent with his safety, to avoid the difficulty of killing his assailant." The defendant excepted to the giving of this instruction on the ground that it places the burden of proof upon him; he says that in no instance does the burden shift from the prosecution to the defendant, but that to warrant a conviction the prosecution is required to show beyond a reasonable doubt the want of justification on the part of the defendant.

It was provided by section 863 of the Indian Territory

statutes that, "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve upon the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." To make a *prima facie* case of murder under this statute the prosecution is required to prove only two facts; namely, the death of the deceased, and the fact that he was killed by the defendant. If each of these facts are proved beyond a reasonable doubt and without disclosing facts sufficient to raise a reasonable doubt as to whether the homicide was only manslaughter or as to whether it was justifiable or excusable, then *prima facie* the defendant is proved guilty of murder. Thereupon the burden of proof shifts to the defendant; and to discharge it he must produce evidence sufficient in quality and quantity to raise a reasonable doubt, either as to the degree of the homicide or as to whether he was justifiable or excusable, failing in which a conviction for murder is warranted. If, however, the defendant does produce evidence sufficient to raise such reasonable doubt, then the burden returns to the prosecution, and to warrant a conviction for murder it must overcome such doubt thus engendered by proof beyond a reasonable doubt of the existence of each essential element of the crime.

Also section 896 of Ind. Ter. Stat. provides, "In ordinary cases of one person killing another in self-defense, *it must appear* that the danger was so urgent and pressing that in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary; and *it must appear also that the person killed was the assailant,* or that the slayer had really and in good faith endeavored to decline any further contest before the mortal·blow or injury was given." The instruction complained of was substantially in the words of the statute; but this statute also is construed almost uniformly to mean that the defendant is required only to raise a reasonable doubt as to the necessity for the killing and as to who was the

assailant.   There could be no objection to this instruction if in connection with it the court gave the explanation which the interpretation of the statute requires.   But it did not do so.   It would have been better if, in the abstract portion of this instruction telling the jury under what circumstances the plea of self-defense could not avail the defendant, the court, instead of using the unqualified expression, "it must appear from the evidence that the defendant was not the aggressor," had stated to the jury in substance that the law of self-defense is solely and emphatically a law of necessity; that it does not only imply the right of attack, and could not avail the defendant if he was the aggressor, or if the fatal difficulty was sought for by him, or was provoked by him by any wilful act of his own reasonably calculated to bring it about, or if he voluntarily or of his own free will entered into it, no matter how hard he was pressed or how great his danger became during the progress of the difficulty.   This would have conveyed to the jury the information intended to be given, and would not have been subject to criticism as placing on the defendant the burden of making greater proof than the law requires of him.

Also in the affirmative charge on self-defense the court told the jury that if they *believed* certain facts from the evidence in the case, then they should acquit the defendant as having acted justifiably; but the court nowhere told the jury, except perhaps inferentially in the general instruction upon the presumption of innocence and the burden of proof, that if, after considering and weighing all the evidence in the case, they entertained a reasonable doubt as to whether the defendant acted in his real or apparent necessary self-defense, then they should give the defendant the benefit of that doubt and acquit him.   The better practice is to do this in connection with the substantive charge on the defendant's theory of self-defense as shown by the evidence.

For the errors indicated the judgment of the lower court is

reversed and the cause is remanded with directions to grant the defendant a new trial. It is so ordered.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.