[Crim. No. 3014. Third Dist. Jan. 19, 1960.]

THE PEOPLE, Respondent, v. LEONARD D. PLUMLEE et al., Defendants; FRANK M. VEITH, Appellant.

John R. Aye for Appellant.

Stanley Mosk, Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Respondent.

PEEK, J.—Following a trial before a jury which found him and his codefendant Plumlee guilty of two counts of armed robbery, the defendant Veith alone appeals.

The record discloses that appellant and Plumlee drove in the latter's car to a pharmacy in Fairfield for the purpose of committing robbery. While appellant remained in the car, Plumlee entered. He approached the clerk at the cash register, Mrs. Woodburn, drew a gun and told her it was a holdup, demanding that she empty the contents of the cash register into a brown bag which he handed to her. She complied, giving him about $45. Plumlee then ordered her to walk behind the prescription counter where Mr. Cain, the proprietor, was sitting. Plumlee told Cain he wanted hypnotics and specifically demanded amytal and seconal. While Plumlee was talking to Cain one Robert Martin drove up to the store and parked his car in front. As he alighted with a friend, he heard a car's horn sounded, and, glancing to his side, noticed that the noise

was coming from a nearby automobile in which a man was sitting on the passenger's side of the front seat. Martin and his friend then entered the store. At this time Cain was withdrawing hypnotics from a drawer behind the prescription counter. Plumlee ordered Mrs. Woodburn to wait on Martin but to say nothing. While serving Martin she gave him a sales slip on which she had written the words, "Call the cops." This she handed to Martin, who then left the store. Plumlee ushered Cain and Mrs. Woodburn into a bathroom at the rear of the store and left with the money and hypnotics. Martin, who was waiting outside in his car, saw Plumlee leave the store and get into the automobile which Martin had noticed when he first approached the store. Martin made a note of the description and license number of the vehicle. On the following day appellant was arrested at his apartment in Napa. A search of the apartment produced a revolver similar to that used in the holdup, a coat similar to that worn by the robber and some small change in a glass jar. In a subsequent search of the apartment later on the same day investigating officers discovered two paper bags containing hypnotics concealed in the wall of the apartment. The hypnotics were divided equally between the two bags and appeared to be those taken in the holdup.

Plumlee was readily identified in a police lineup by both Mrs. Woodburn and Mr. Cain, but appellant was not identified at any time by anyone. Subsequently, however, and apparently against the advice of his attorney, he freely confessed to the police that he had been Plumlee's accomplice. In his statement to the police he admitted having helped plan the holdup, having kept the car running while Plumlee was inside the drugstore and having sounded the horn to warn Plumlee of Martin's approach. He further stated that he and Plumlee had divided the hypnotics equally, and that he had received five dollars of the stolen money. At the trial neither defendant nor Plumlee put on a defense.

Defendant's principal contention here, as it was in the trial court (by demurrer and motion to quash), is that he was improperly charged and convicted of two counts, since there was but ". . . one taking, at one time, from one place, even though two people were present," and that in any event, ". . . all taking was from Mr. Cain, the owner, and not from Mrs. Woodburn, the clerk, her presence being merely incidental."

As noted in *People* v. *Lagomarsino,* 97 Cal.App.2d 92,

98 [217 P.2d 124], much conflict exists in other states. "California, however, has definitely aligned itself with those states that hold that, so far as crimes against the person are concerned (murder, assault, robbery, etc.), although there may be but one act or intent, there are as many crimes as there are persons affected." (See also *People* v. *Galvin,* 148 Cal.App.2d 285 [306 P.2d 575] ; *People* v. *Kelly,* 168 Cal.App.2d 387 [335 P.2d 955].) The cases relied upon by defendant, such as *People* v. *Dillon,* 1 Cal.App.2d 224 [36 P.2d 416], involve offenses against property and hence are not in point.

■ Although defendant has cited no case in support of the second portion of his contention, nor has the prosecution in answer thereto, it likewise would appear to be without merit. A somewhat similar contention was made in *People* v. *Downs,* 114 Cal.App.2d 758 [251 P.2d 369]. There the court, in discussing the possession necessary to support a robbery conviction, quoted with approval the following: " 'We think the word "possession" in this statute is not used in the strict larcenous sense, as a result of which, although custody or control may be in a servant or agent, legal possession is said to be in the master. Larceny is an offense against the possession; robbery, against the person. The local robbery statute in our view uses the word "possession" in a colloquial sense, meaning nothing more than custody or control.' " (P. 765.) In the present case the very nature of her duties as clerk gave Mrs. Woodburn both custody and control of the money in the cash register; any other conclusion would lead to illogical results. Certainly it could not be successfully contended that where money was forcibly taken from a cashier at one of many checkout counters in a large supermarket there would be robbery only if the owner were present. If so would it be necessary that the owner be in the immediate presence of the cashier, or would the rule be different if he were in his office at the other end of the building—quite possibly a block away? We conclude there was a separate act and a separate intent; first, when the clerk was forced to give money from the cash register to Plumlee, and secondly, when the owner was forced to give him hypnotics. Hence it was proper to charge each act in a separate count.

■ It is defendant's next contention that the corpus delicti of the crime charged was not proven prior to the admission into evidence of his confession. His supporting argument appears to be that it was necessary for the prosecution to show some identification of him as a prerequisite to the

admission of the statement. It is the rule that ''proof of the corpus delicti does not require proof of the identity of the perpetrators of the crime, nor proof that the crime was committed by the defendant.'' (*People* v. *Cobb*, 45 Cal.2d 158, 161 [287 P.2d 752].) In the present case the testimony of Mrs. Woodburn and Mr. Cain established without contradiction that the crime of robbery had been committed prior to the admission of the confession.

Defendant's final contention is that the trial court prejudicially erred in refusing to permit counsel to argue objections raised concerning the admission of certain evidence. While the attitude of the court toward defense counsel may well have conveyed to the jury his favorable feeling toward the prosecution, we cannot say in light of the complete confession of the defendant that had the trial court's conduct been otherwise the jury might well have reached a different verdict.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.