## JOHN WILLIAMS AND JIM GORDON V. THE STATE.

*No. 1254. Decided February 10th, 1897.*

1. **State's Witness Whose Name is not Endorsed on Indictment.**

It constitutes no ground of objection to a witness testifying that his name has not been indorsed upon the indictment.

2. **Witness not Under "The Rule"—Officers of Court—Practice.**

It is within the discretion of the court to permit a witness to testify, who has not been placed under the rule. And, it is entirely within the discretion of the court to excuse from "the rule," officers of court (as deputy sheriffs), whose services may be necessary about the court room.

3. **Confessions While in Arrest, Before Examining Court—Predicate For.**

Where defendant made a confession before the examining court, which the Justice of the Peace reduced to writing, and which was signed and sworn to by defendant, a sufficient predicate for its introduction in evidence is shown, where the justice swears, that he told defendant, before he made the confession, that it might be used against him; and warned him not to make any statement; that it was made at his, defendant's, own solicitation, and was voluntary.

**4. Robbery—Possession and Ownership of Property Taken.**

Where an indictment for robbery alleged, that the property belonged to, and was taken from the possession of, Mrs. B., and the evidence was that the property taken was a gun, which was owned by the son of Mrs. B., who was thirty years of age, who was absent at the time; and that, when taken, it was not taken from the person or manual possession of Mrs. B., but was a few feet from her, and in a room in the house. Held: It was not necessary for the indictment for robbery to allege the ownership and want of consent. And the proof showing that Mrs. B., at the time, was in the actual care, control and management of the property, and that she had control of the house and its contents, the evidence supports the conviction, and a charge of the court, in consonance with these legal propositions, was correct.

**5. Confessions—Charge.**

Where there is no evidence impeaching the predicate laid for the introduction in evidence of defendant's confessions, it is not error for the court to refuse to instruct the jury, that before the confession could be considered, the jury must believe, that the same was made without compulsion, and without the fear of punishment or hope of reward; and, that they must further believe, that defendant was cautioned, that the statement made by him might be used against him, otherwise they would disregard and not consider said confession.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for robbery; penalty, twenty-five years' imprisonment in the penitentiary for each of the appellants.

The indictment was a joint one against John Williams and Jim Gordon for the robbery of Mrs. H. Bleick. The charging part of said indictment being, "with force and arms then and there in and upon Mrs. H. Bleick, did make an assault and did then and there by the said assault and by rudely displaying a pistol, said pistol being then and there a firearm and a deadly weapon, and by violence to the said Mrs. H. Bleick and by putting the said Mrs. H. Bleick in fear of life and bodily injury, fraudulently and without the consent of the said Mrs. H. Bleick, took from the person and possession of her (the said Mrs. H. Bleick) one shotgun of the value of $6, and $6 in lawful money of the United States of the value of $6; which said shotgun and said money was then and there the corporeal personal property of the said Mrs. H. Bleick, with the intent to deprive the said Mrs. H. Bleick of the same and to appropriate the same to the use and benefit of them, the said John Williams and Jim Gordon, etc."

Mrs. H. Bleick being sworn as a witness for the State, testified as follows: "I live in Harris County, Texas, near the city of Houston. In August, 1896, was living at said place, the house being my own, and my son, Ed Bleick, living with me; no one else besides my son living with me. On August 1, 1896, between 7 and 8 o'clock, a. m., I was robbed. I had been out of the house about two minutes; when I came in I saw some one by the window, and then these two men came up and sat down on the kitchen gallery; the door was shut and one of them knocked on the door, and when I opened it he asked for something to eat. I went to my safe to give him something, and as soon as I was at the safe, he stepped up to me and held a pistol in my face and asked

me for what money I had. I told him I had no money. One held the pistol on me and the other searched the house for money. I cannot say whether or not they found any money. I was in one room—the dining room. They looked for money, and they took a shotgun. The shotgun was back of the safe, and about five steps from where I was. One of the men, John Williams, held the pistol on me and the other one, Jim Gordon, got the shotgun. The money I spoke of having was my son's; he had it in his pants pocket. He was not at home, but was at work about a mile away. The money which was taken was taken from my son's clothes. I know the parties that did it. I positively identify both these defendants as the men who did it. That black man, John Williams, worked for me three months; the other one, Jim Gordon, I saw twice. The robbery was in Harris County, Texas. I got the shotgun back. He pawned it and my son got it out of the pawnshop. The house was my house, and I was at the head of the house. There was no one there except myself, when the defendants came."

Cross Examination: "My son is about thirty years old, and I am living with him. The shotgun was my son's and not mine. The shotgun was not in the same room I was in, but was about five steps from where I was. I was in the kitchen when the shotgun was taken, and the shotgun was in the dining room. The kitchen is about ten feet square; the dining room about the same size. There was an opening between the kitchen and dining room the size of a door, but no door shutter."

Redirect by State: "After the robbery I went down to the jail, and four men were brought out, and I picked out these two men; no one told me."

Perkins sworn as a witness for the State testified as follows: "I know Mrs Bleick; I met her at the jail. There were four or five men brought out, and Mrs. Bleick identified the defendants. She was not told."

John Gormon sworn as a witness for the State testified: "I work at Sweeney & Coombs' Loan Office in Houston. The black fellow (pointing to Williams) pawned a gun to me there. I gave him $5 on it." Then witness identified Ed Bleick as the man who claimed and received the gun after it was pawned.

Ed Bleick sworn as a witness for the State testified as follows: "In August, 1896, my gun was taken; nothing else was taken that I know of. I afterwards got the gun. I got it about five days afterwards. I found the gun at Sweeney & Coombs' pawnshop. I identified the gun and got it from the witness, Gormon, who has just testified. It was my gun. I am the son of Mrs. H. Bleick, and am about thirty years old. My mother resides with me at the place where the gun was lost. I am a single man. I support my mother by farming. I am a farmer."

J. T. Mahoney, sworn as a witness for the State testified: "In August, 1896, I was a Justice of the Peace of Precinct No. 1, of Harris County, Texas. I saw both of the defendants at that time; they were be-

fore me.  John Williams made a statement.  I warned him that any statement he made might possibly be used againt him, and told him not to make any statement as it might be used against him.  I did not tell him that it might be used in his favor.  To the best of my recollection I told him the statement might be used against him, and warned him not to make any statement.  The statement was made at his own solicitation and was voluntary.  He was not urged and was brought to me after the trial and I told him he had better look out, that if he made any statement it might be used as evidence.  The statement is as follows:  'Jim Gordon and myself, John Williams, went to where the Bleick house was.  We saw all the people go away.  Mrs. Bleick then came and we went up to her and asked her for something to eat.  We then went up on the gallery of the house.  We both pulled pistols on her, and demanded her money.  Gordon said 'give us what money you have.'  She said she had no money.  I then said, 'you must have some money,' and Gordon told her to go and get the money.  We found no money, but we got a shotgun.  I pawned the gun at Sweeney's pawnshop, and got $5 for it.'"  This statement was signed by John Williams, and witnessed by Constable W. W. Glass and Deputy Sheriff J. B. Gilbert, and was sworn to before Justice of the Peace J. T. Mahoney.  This ended the testimony.

*Allen & Watkins*, for appellant John Williams, and *W. A. Carter*, for appellant Jim Gordon.—Error of the court in not granting the defendants a new trial upon the following ground, to-wit:  Because the verdict and judgment is contrary to the law and the evidence in this, that there was no evidence that the gun taken, if any was taken, was in the possession or on the person of Mrs. H. Bleick, and because there was no evidence that the gun taken, if any was taken, was the property of Mrs. H. Bleick, and because it appeared from the evidence that the gun was the property of Ed Bleick, and there was no evidence that he did not agree to the taking of said gun, if any was taken.

The evidence showing that Ed Bleick was a man thirty years of age, and lived at the house from which the gun was taken, and took care of his mother and owned the gun, there was no sufficient proof of ownership in Mrs. H. Bleick, and the variance was such that the evidence did not authorize a verdict.

It was alleged that the gun was taken from the possession and person of Mrs. H. Bleick, and that it belonged to her.  The evidence showed that the gun was taken from a room in the house where she and her grown son lived; that she lived with her son, and he took care of her by farming, and that the gun belonged to her son.  Clark v. State, 16 S. W. Rep., 171; Ryan v. State, 3 S. W. Rep., 547; Merriwether v. State, 33 Texas, 790; Otero v. State, 17 S. W. Rep., 1081; Green v. State, 30 S. W. Rep., 220; Higgins v. State, 19 S. W. Rep., 503.

Error of the court in not granting the defendants a new trial upon the following ground to-wit:  Because the court erred in allowing the

witness, Deputy Sheriff J. B. Perkins, to testify, the defendants having invoked the rule requiring the separation of the witnesses, and the said witness, Perkins, having remained in the court, and having heard all the testimony, exceptions being retained as to the actions of the court in allowing said witness to testify.

Error of the court in not granting the defendants a new trial upon the following ground, to-wit: Because the court erred in allowing the witness, J. T. Mahoney, to testify in this cause, the defendants having invoked the rule requiring the separation of witnesses, and the said witness, Mahoney, having heard the testimony of the witness, John Gormon, defendants objecting to said Mahoney testifying, and reserving their exceptions thereto. The rule requiring the separation of witnesses is a matter of right, and when invoked the witness should be compelled to remain out of the court room, and if they in violation of the rule hear any of the evidence, the court should exclude their testimony. Arts. 699, 700, 701, 702 and 703, Rev. Stat., 1895; Heath v. State, 7 Tex. Crim. App., 464; Rummel v. State, 3 S. W. Rep., 763.

Error of the court in not granting the defendants a new trial upon the following ground, to-wit: Because the court erred in admitting the purported statement or confession of the defendant, John Williams, there being no evidence that said Williams was warned that the statement would be used against him. The defendants objected to said statement, and reserving their bill of exception to the action of the court in admitting said statement.

The evidence of J. T. Mahoney, a Justice of the Peace, was that the defendant, John Williams, was under arrest when he (Mahoney) told him that if he made a statement, it might be used against him.

It is not sufficient to tell a defendant under arrest that a statement that he makes might be used against him. The officer should tell him that it would be used against him. The warning should be clear, certain and unequivocal. The well known disposition of police officers to obtain confessions is such that the only protection for the innocent and nervous, is to refuse to hear purported confessions where there is any evidence of unfairness, force, fraud, intimidation, or any inducement or promise held out to induce the confession. Arts. 789, 790, Rev. Stat., 1895; State v. Kennade, 26 S. W. Rep., 347 (Mo.), 5th h. n.; Mathews v. State, 28 S. W. Rep., 474. In the Mathews case the body of the decision sustains our position, though the head note is contra.

To constitute the offense of robbery, the property must be taken from the person or possession, otherwise it is merely theft. Defendants requested the court to charge the law about taking from the person or possession, which the court refused to do. Art. 856, Rev. Stat., 1895; Green v. State, 30 S. W. Rep., 220.

The court by his charge stated that possession, charge and control of Mrs. H. Bleick would be sufficient proof of ownership. In this we believed the court erred. In the case of Merriwether v. State, 33 Texas, 790, the ownership of the property, which was community property, was

alleged in the wife. The court in deciding that case held that she had no ownership, and although it was in the house where she lived, it was not her possession but the possession of her husband. The evidence in this case is stronger against ownership than in that case. Here Ed Bleick, a man of thirty years of age, who supported and took care of his mother, owned the property that was taken, if any was taken. The property was in a different room from his mother; she did not have the actual possession of it, and she had no ownership whatever in it. If proof of possession by a wife, who certainly has a community interest in property, is not sufficient, how much less sufficient is it to prove ownership in a mother, who it is admitted does not own the property, and who has only possession as being in charge of a house where the property has been left by her grown son who owns it. The charge by the court as complained of in the eleventh assignment of error, was on the weight of evidence, and was a practical assumption that Mrs. H. Bleick was in the "possession, charge and control" of the gun alleged to have been taken.

*Nat P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellants were convicted of robbery, and given twenty-five years each in the penitentiary, and prosecute this appeal. Appellants object to the action of the court in permitting the witness, Perkins, to testify in the case, for the reason that his name did not appear on the indictment, defendants, therefore, having no notice that said Perkins would be used as a witness, and, further, because Perkins had been in the court room during the admission of all the testimony which had been introduced, up to the time that he was placed on the witness stand. It is further stated that the rule had been invoked, and the witnesses had been placed under the rule. It constitutes no ground of objection to a witness testifying that his name was not placed upon the back of the indictment. If the defendants had been surprised at the testimony, or were placed at a disadvantage before the jury on this account, they might have moved for a continuance, the refusal to grant which might or might not have constituted reversible error, and would depend upon the facts. It seems, and the bill of exception so states, that Perkins was a deputy sheriff, and was needed in the court room during the trial. It is within the discretion of the court to permit a witness to testify who has not been placed under the rule. This is within the sound discretion of the court, and the abuse of this discretion will not be presumed, but such abuse must be clearly shown. We do not understand that the court has abused that discretion in permitting a deputy sheriff to testify who has not been placed under the rule, when the services of that officer may be necessary about the court room. To hold that the court would not be permitted to exercise its discretion in this matter, as was done in this case, might end in the defendant's plac-

ing all of the officers of court under the rule, thus leaving the court helpless. The witness, Mahoney, was permitted to testify on the trial. He had not been placed under the rule, but had been in the court room, and "heard the last half of Gorman's testimony," wherein said Gorman testified in regard to Ed Bleick having identified the shotgun which was pawned by the defendant, John Williams. The gun referred to was the gun alleged to have been taken from the prosecutrix. Mahoney was introduced for the purpose of proving that he, as justice of the peace, wrote out the statement and confession of the defendant, John Williams. It is not attempted to be shown by this bill, so far as we understand it, that the discretion of the court was in any sense abused.

By the third bill of exceptions it is shown that the State introduced the witness, Mahoney, who, as justice of the peace, tried appellants, as an examining court. He was introduced for the purpose of identifying the confession of the defendant, John Williams, which being done, the State offered in evidence the said confession. This confession was reduced to writing, and signed and sworn to by the defendant, John Williams. The ground of objection urged to the introduction of the confession was because it did not appear that the witness had warned the defendant that the statement would be used against him, and it did appear that the defendant was under arrest, and in charge of an officer at the time he made said statement. The bill of exceptions, as well as the statement of facts, shows that the witness did warn Williams that any statement or confession he might make might be used against him as evidence; that he did not ask Williams to make any statement; that Williams voluntarily made the confession. The statement of facts in this connection shows that said witness identified the written confession referred to as the one made by defendant, Williams, and in this connection further testified as follows: "Before I wrote this, he [Williams] was duly warned and sworn. I told him, and warned him that, if he made any statement, it might be used against him, and told him not to make any statement that might be used against him. I did not tell him that it might be used in his favor. I told him it might be used against him. To the best of my recollection, I told him the statement might be used against him, and warned him not to make any statement. It was made at his own solicitation. It was voluntary." It was also shown that the defendant was under arrest at the time. This was a sufficient predicate to authorize the introduction of the written statement of the defendant, Williams. Said written statement was then introduced, the substance of which was that he and Gordon went to the place of the robbery, and demanded of Mrs. Bleick something to eat. She informed them that she had nothing to eat, except some bread. They then went up on the gallery, walked in together, side by side, to where Mrs. Bleick was standing in the kitchen. Both pulled their pistols on her, and demanded money from her. "She said she had no money. I then said, 'You must have some money,' and Gordon then told her 'to go and get that money.' She said there was no

money, as she had spent the last for sugar. We both then commenced to search for the money. We found no money, but got a shotgun and some cartridges which were in the house. The gun was taken by Gordon. We then came out of the house, and made our way to Houston. I pawned the gun at Sweeney's pawnshop, and got five dollars for it, and it was divided between us." There was no error in admitting this testimony. The predicate was properly laid, as shown by both the bill of exceptions and the statement of facts. "Being cautioned as the law directs, the fact that he was under arrest does not affect the question; for, with the caution, his statement would be precisely the same as if he was not under arrest." See, Salas v. State, 31 Tex. Crim. Rep., 485, and Kirby v. State, 23 Tex. Crim. App., 13.

The defendants requested a charge that, unless the jury believed that the property alleged to have been taken was the property of Mrs. H. Bleick, they would find the defendants not guilty. They further asked a special charge, that, unless the jury believed beyond a reasonable doubt that the property alleged to have been taken was taken from the person and possession of Mrs. Bleick, then they should acquit. They also asked a special charge to the effect that if the jury believed defendants guilty of any other offense than robbery, and they did not believe this to be a case of robbery, they would acquit. These charges were refused. The court in this connection charged the jury that if the gun actually belonged to Ed Bleick, if taken at all, was in the possession, charge, and control of Mrs. Bleick, then the gun is deemed, within the law of this case, to have been the property of Mrs. Bleick; and, to constitute a taking of it from her possession, it would not be necessary that it should have been taken from her person, provided it was taken from her actual possession, charge and control; and in such case it would not be necessary for the State to prove that said Ed Bleick did not consent to the taking of said gun, if it was taken. In this connection the court further charged the jury that, before they could convict, they must believe that the defendants, by exhibiting and using a pistol—and that pistol a firearm or a weapon calculated reasonably and probably, as used, to kill—did fraudulently take the gun from the possession of Mrs. Bleick, without her consent, and with the intent to deprive her of the gun and its value, and to appropriate it to their own use; that then they would be guilty. We have only stated the substance of the charge of the court on this line, and have not undertaken to give the exact language or a proper form. We believe the court's charge was correct, and there was no error in refusing the special charges above requested by appellants. The indictment alleged that the property was taken from the person and possession of Mrs. Bleick, and that it was then and there the personal property of Mrs. Bleick, with the intent to deprive her of the same, and to appropriate it, etc. Under the statute of robbery, it is only necessary to charge that the property was fraudulently taken by force or by violence, or by the use of firearms, etc., from the person and possession of the party holding the same.

It is not necessary to allege the ownership and want of consent. If, as a matter of fact, the property was not the property of Mrs. Bleick, but that of her son, and the appellants had the authority of the real owner to take the property, this would be a matter for them to prove. It was not necessary for the State to show they did not have the consent of the real owner. In this case it is not denied that the property was taken from the possession of Mrs. Bleick. Appellants offer no proof indicating they had the consent of the real owner, Ed Bleick, to take the property; hence those issues, as set forth in the special requested instructions, were properly withheld from the jury. In other words, the court did not err in failing to instruct the jury in these respects, as requested by appellants.

It is not necessary, under the state of case before us, to discuss the question of ownership. It is true, the indictment alleges that the ownership was in Mrs. Bleick; and the proof, we believe, sustains that allegation. Whether or not this would have constituted a variance, if it had been shown that the property was not in her actual care and control, is not necessary for us to discuss. The facts show that the premises belonged to her. She had the control of the house and of its contents. She and her son lived there, and he assisted in the support of the family; and her testimony shows that she had the actual care, control and management of the entire premises and the things about the premises. Her son was not at home, was away at work. Mrs. Bleick being alone at the time of the taking. Even in a case of theft, we are of opinion that this testimony would have constituted her the owner in law. Ownership may be constituted as well by actual control, care and management of property, in cases of this sort, as by proof of real ownership. We believe the court's charge was correct, properly submitting the law applicable to the facts; and there was no error in refusing the requested special instructions asked by appellants. Appellants also asked a charge that, before the jury could consider the confession proved against Williams, it must appear that the same was freely made, without compulsion or persuasion, and without the fear of punishment or the hope of reward; and that if, at the time said confession was made, defendant was under arrest, it must further appear that the defendant was cautioned that the statement might be used against him, otherwise they should disregard and not consider said confession. Under a proper case, the charge requested should have been given, but the facts of this case did not warrant it. There is no issue raised by the testimony to authorize this charge. The proof is unchallenged and uncontradicted that the defendant, Williams, made the confession voluntarily, against the advice and admonition of the officer to whom it was made, and with the thorough understanding that it might be used against him. If this had been denied, and an issue raised as to whether or not the predicate had been laid, then it would have been proper for the court to have submitted that issue to the jury. That rule is well settled, but such a charge is not required or authorized when

there is no evidence impeaching the predicate laid for the purpose of introducing the confession. It is further contended that the testimony is not sufficient to support this conviction. We are of opinion that it is. The testimony of Mrs. Bleick makes it a case of robbery by the use of firearms. The confession of the appellant, Williams, so far as he is concerned, makes it a case of robbery. Mrs. Bleick identified both of the appellants, and fastens the crime upon them by her testimony, and they have introduced no evidence to the contrary. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellants' motion for rehearing was overruled without written opinion.—Reporter.]