## L. V. REESE v. THE STATE.

### No. 6616. Decided March 1, 1922.

### Rehearing Denied · April 12, 1922.

**1.—Robbery—Owner—Possession—Variance—Name of Injured Party.**

Where the indictment alleged "R. Y. Williams" as the injured party, in a trial for robbery, and the evidence showed that one Douglas had general supervision of the railroad station, and that Williams and Johnson were also railway employees incident to transacting the business in the station; that they performed such duties in turn, and that on the night of the robbery Williams was in exclusive, control, and management of the railroad office, including the safe out of which the money was taken, there was no reversible error.

**2.—Same—Robbery—Possession—Rule Stated—Personal Possession.**

Unlike that of many other States, our Statute denouncing robbery includes the taking from the possession as well as from the person; and if the property is taken from the possession and control of the party injured, although the same is not in actual personal possession, the proof is sufficient and the conviction sustained.

**3.—Same—Rehearing—Statutes Construed—Theft—Robbery—Rules Stated.**

There is no question but that under the present statute defining robbery, one may be convicted of that offense who takes property from the possession of another by any of the means named in the statute. If, therefore, the property was in possession of the party alleged to have been injured at the time the robbery was committed, the conviction must be sustained, as possession under the robbery statute is in no way different from that under the theft statute. Following Gordon v. State, 37 Texas Crim. Rep., 147, and · other cases.

Appeal from the District Court of Clay. Tried below before the Honorable H. F. Weldon.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Muse & Taylor,* and *Smith & Abernathy,* for appellant.—Cited Skipworth et al. v. State, 8 Texas Crim. App., 137; Evans v. State, 29 S. W. Rep., 266.

· *R. G. Storey,* Assistant Attorney General, for the State.—Cited cases in opinion.

MORROW, PRESIDING JUDGE.—The appeal is from a conviction for the offense of robbery; punishment fixed at confinement in the penitentiary for a period of five years.

In the indictment R. Y. Williams is named as the injured party. About $600 was taken from the safe in a railroad station. A part

of the money belonged to the railroad company, a part belonged to the express company and a part to Douglas, an agent for the railroad company.

Douglas had general supervision of the station. Williams and Johnson were also employed by the railroad company through a different official from that by whom Douglas was employed. In the performance of the duties incident to transacting the business in the station, the work was divided between the three. Douglas was a telegraph operator and during a part of the twenty-four hours collected freight and sold tickets. At the end of his shift, he checked the tickets into the hands of Williams, at the same time taking account of the money on hand and transferring it all, save a small amount for change, into the safe, of which he, Douglas, alone had the combination. Williams in turn performed the same duties during his shift and at its termination checked the tickets and money in his hands over to Johnson. Neither Williams nor Johnson had the right to handle the money that was put in the safe, but it was the duty of Douglas to make remittances of the company money. At the time of the robbery, a greater part of the money in the safe belonged to Douglas personally.

The offense took place near midnight. Douglas at the time was asleep in an adjoining office to that in which the safe was kept and where Williams was at work. Johnson was not on the premises. In the commission of the offense, Lacour acted with the appellant. The appellant knocked on the door and then pushed it open, presented his pistol and demanded of Williams that he hold up his hands, with which Williams complied. Williams was requested to open the safe, but he did not have the combination and could not do so. Lacour knew the combination and opened the safe and abstracted the money. Williams was ordered out of the station office, appellant and Lacour both holding their pistols in an attitude to shoot him as he walked through the door; they directed that he should not use the telephone or telegraph for two hours after their departure. A pistol shot was fired and Williams was assaulted and seriously injured by blows upon his head inflicted by one or both of his assailants. Williams said in his testimony:

"I controlled the business while I was on duty. Douglas and I were not on duty at the same time. I was telegraph operator and clerk, and he was agent. His position was the same in the day as mine at night, that is, telegraphing and protecting the company's business in all ways. I did not know the combination to the safe; and did not put money in the safe. Mr. Douglas made the remittances to the company every month."

Upon these facts, appellant insists that the offense was not robbery but theft. He bases this theory upon the view that the money was not taken from the person or possession of Williams and his relation

to it was not such as to bring him within the purview of the statute which, in defining robbery, says:

"If any person shall, by assault or violence or by putting in fear of life or bodily injury, fraudulently take from the person or possession of another any property with the intent to appropriate same to his own use shall be punished, etc."

Robbery and theft are closely related. The actual or threatened violence to the person antecedent to the robbery is a distinguishing element. Barton v. State, 88 Texas Crim. Rep., 368; 227 S. W. Rep., 318; Bishop's New Crim. Law., Sections 1166 and 1167; Penal Code, Art. 1327. Unlike that of many other states, our statute denouncing robbery includes the taking from the possession as well as from the person. See Clark v. State, 87 Texas Crim. Rep., 107. Of statutes using the more restricted term, it is said:

"The meaning is not that the taking must necessarily be from the actual contact of the body, but it suffices when only under the personal protection. A taking in the presence of an individual put in fear is in law a taking from his person." Bishop's New Crim. Law, Sections 1177 and 1178; State v. Lamb, 242 Mo. 398; 146 S. W. Rep., 1169; State v. Kennedy, 55 S. W. Rep., (Mo.), 293: Cyc. of Law & Proc., Vol. 34, p. 1798; Hill v. State, 145 Ala. St. Rep., 60; Hill v. State, 42 Neb. St. Rep., 526; Commonwealth v. Homer, 127 N. E. Rep. (Mass.), 520; State v. Calhoun, 72 Iowa, 433; O'Donnell v. People, 224 Ill. St. Rep., 218; Amer. & Eng. Ann. Cas., Vol. 8, p. 126. See Note.

In the last mentioned case, the similarity of the facts to those here revealed is worthy of note. O'Donnell was convicted of an assault with intent to rob Dorgan. O'Donnell and another had planned to enter the railroad station, blow open the safe and steal its contents. Dorgan was a watchman on duty at the station, and as O'Donnell and his confederate approached, Dorgan opened the door and they made an inquiry of him about the trains. They then assaulted him, but in the struggle that ensued, he succeeded in obtaining a pistol from the office and they fled. Disposing of the matter, the court made this comment:

"There is nothing in our statute that shows that the term 'from the person' was used in the restricted and popular sense contended for by plaintiff in error. Joseph E. Dorgan, being a watchman and in immediate charge and possession of the station and all the personal property therein contained, as against the plaintiff in error was the owner and in the possession of such property. If plaintiff in error and his confederates entered into a conspiracy to go into said station house and feloniously steal money or other valuable property therein, and if, upon arriving at said station house, they found the watchman there in charge of the property which they intended to steal, and if he was violently assaulted, for the purpose of overcoming his resist-

ance or of putting him in fear, by the plaintiff in error with the intent to enable the conspirators to steal the money or other valuable thing then being in the possession and control of the said Dorgan, and were only intercepted and prevented from accomplishing their purpose by the resistance of the said Dorgan, the offense would be an assault with intent to rob the said Dorgan, and would be complete without proof of a specific intent to steal money or goods that were actually on the person of the said Dorgan.''

From what has been said, it follows that, in our judgment, the relation of Williams to the property was such as to characterize the assault upon him to obtain the property and its acquisition thereby as robbery. The judgment is therefore affirmed.

*Affirmed.*

ON REHEARING.

April 12, 1922.

LATTIMORE, JUDGE.—There would seem no question but that under the present statute defining robbery, Article 1327 Vernon's P. C., one may be convicted of that offense who takes property from the possession of another by any of the means named in the statute; nor would there seem room for doubt from the facts in the instant case but that property other than his own, was taken by such means by appellant. The assault and violence necessary to constitute robbery was shown to have been made and inflicted upon Mr. Williams. If then the property so taken was in the possession of Mr. Williams at the time the offense was committed, there would seem no further question of the soundness of our opinion. Williams testified that on the night of the robbery he was alone in the office of the railroad company for which he worked and whose property was taken out of a safe in said office, and that he had the care, management and control of the safe and its contents. Williams worked at night and was technically operator and ticket agent during that time. Mr. Douglas was the general agent of the railroad company at the station and worked days. When he went off duty he checked out to Williams and Williams had charge of the company's property while on duty. He was under bond to protect the safe. Douglas was asleep in another part of the building when the alleged robbery was committed.

Possession under the robbery statute would seem in no way different from that under the theft statute. In Williams v. State, 34 Texas Crim. Rep., 531 we said: ''So far as the robbery was concerned, the checks and funds were his property, were in his possession, and he was compelled to surrender same to defendant; and, *as in a theft case,* said check, being in his possession, was his property.'' So in the case of Williams and Gordon v. State, 37 Texas Crim. Rep., 147, the facts of which case showed that certain money and a gun belonging to her son were taken at the point of a pistol from a woman alleged

in the indictment to be in possession of said property. It was shown that her son lived with her but was off at his work at the time of the alleged robbery. This court said:

"The indictment alleged that the property was taken from the person and possession of Mrs. Bleick, and that it was then and there the personal property of Mrs. Bleick, with the intent to deprive her of the same, and to appropriate it, etc. Under the statute of robbery, it is only necessary to charge that the property was fraudulently taken by force or by violence, or by the use of firearms, etc., from the person and possession of the party holding the same."

Contention is made that the case of Evans v. State, 34 Texas Crim. Rep., 110, conflicts with our opinion herein. We do not so understand that authority. Said case was reversed because the indictment alleged the property was taken from the person and *possession* of the alleged owner. A watch was taken from his person, and a certain coat, vest and pants were taken from his possession. Judge Henderson said in the opinion:

"If the court, when the question was presented to it on a motion to quash, had eliminated all that part from the State's charge involved in the defective charge of possession, and had confined the proof solely to the watch, or had admitted proof of the other property taken at the same time and place as the watch, and then properly directed the jury how they might consider such other proof, then the conviction might stand. But instead of pursuing this course, the court, over the objections of defendant, told the jury that they might convict him if they found that he had taken any of the property charged from the possession of Barnard, when there was no sufficient allegation of such possession, and committed an error for which the case must be reversed, and the judgment of the lower court is accordingly reversed and remanded." We find nothing in the Evans case, supra, to sustain any view contrary to the expressed in our opinion. That Mr. Williams in the instant case, was in possession of the safe, including its contents, so as to make him in possession of the same within the contemplation of our law of theft and robbery, is a proposition in which our minds are in no doubt.

The motion for rehearing will be overruled.

*Overruled.*