ROSE HARRIS v. THE STATE.

No. 13733. Delivered January 7, 1931.
State's Motion for Rehearing Denied June 17, 1931.

The opinion states the case.

*Ray Johnson,* of Galveston, for appellant.

*Owen D. Barker,* County Attorney, of Galveston, and *Lloyd W. Davidson,* States's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery by assault; the punishment, confinement in the penitentiary for five years.

Appellant is a negro woman, who, according to her own testimony, was a prostitute at the time she was charged with the robbery of Arthur Leiser, a white man. In front of appellant's door was a gallery, which, according to the testimony of the arresting officer, was about "shoulder high", with five or six steps. Going from the sidewalk in front of the house to the bottom step of the gallery one would have taken six or seven steps. According to the testimony of the injured party, it was just within the door fronting the gallery that appellant robbed him. Touching the assault, we quote the testimony of Leiser as follows:

"I walked two and one-half blocks and this girl right here grabbed me and she said, 'Where are you going, honey?' I said 'It's none of your business', and she grabbed me by the waist and started scuffling, and it took me by surprise. It was like lightning struck me, and before I knew

it she had me backed in the door, and she reached in my pocket and took the $80.00. I didn't miss it, but my clothes were all torn loose, and she put the pocket-book back, and I got about as far as from me to you (about ten feet away), and I looked and I said 'My God, that woman has my money', and I ran back there, and as I hit the front door she and some other girl came out. She said 'You are a damned liar. You haven't any money.' I said 'If you don't give me my money I am going to get a policeman.' She said 'Go get a policeman. I will tell him you stayed with me.'"

On cross-examination, the witness testified that appellant did not drag him up the steps and into the room. He declared that she had him up there before he realized anything had happened. He further testified that his arms and legs were free but that appellant held him around the waist. It appears further from his testimony that he did not discover that his money was gone until he noticed that his pocket-book was cross-ways in his back pocket. The transaction occurred about 11:00 o'clock in the morning. The arresting officer came upon the scene in a few minutes after the alleged assault. He searched appellant but found no money. The house was not searched. According to the testimony of this witness, he being a state's witness, appellant stated to him that she had not taken the injured party's money. She said that he had "stayed with her", having come into her room voluntarily. The witness further testified that Leiser, the injured party, told him at the time that appellant took hold of him as he was passing her house and told him to come into her room; that as she was pulling his coat he went with her; that as he got into the room appellant felt around the back of his pants; that she took his pocket-book out of his back pocket, extracted his money, and replaced the pocket-book. On the examining trial the injured party testified that appellant grabbed him by the arm, with the statement that she would show him "a good time for four bits"; that he jerked away and she grabbed him around the waist; that before he knew it, appellant had him right in her doorway. He further testified on the examining trial that he did not feel appellant get his pocket-book and did not learn that she had gotten it until he found the purse crossways in his back pocket. The bed in appellant's room showed that it had been recently occupied. There was a bowl nearby, with water in it.

Appellant strenuously insists that the evidence is insufficient to support a conviction for robbery by assault. In Reese v. State, 91 Texas Crim. Rep., 457, 239 S. W., 619, it was said that the actual or threatened violence to the person antecedent to the robbery is a distinguishing element between "robbery" and "theft". In Rylee v. State, 90 Texas Crim. Rep., 482, 236 S. W., 744, Judge Hawkins, speaking for the court, said that the degree of force is immaterial so long as it is sufficient to compel one to part with his property. In view of the conflict found in

the testimony touching the assault, we are unwilling to give our sanction to a judgment convicting appellant of the offense of robbery. The actual violence to the injured party antecedent to the alleged robbery is not, in our opinion, sufficiently demonstrated by the testimony found in the record. The res gestae statement of the injured party testified to by the arresting officer as a state's witness is in direct conflict with the testimony given by the injured party on the trial. If believed, it warranted the conclusion that he voluntarily followed appellant into the room when she took hold of his coat. Moreover, there is serious conflict between the statement given by Leiser on the examining trial touching the assault and his testimony given on the main trial. Both statements were made under the sanction of an oath. In the light of the entire record, we are unable to reach the conclusion that the evidence is sufficient to support the conviction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—On the trial the injured party, Arthur Leiser, gave testimony tending to show that the appellant, by the use of force, took eighty dollars in money from him. The arresting officer testified that the injured party made a statement to him immeditaely after the robbery. The record reflects that this statement was res gestae. We quote the statement as follows:

"My testimony is that this man told me at that time, while he and I and Rose Harris were in the room of Rose Harris, that Rose Harris got hold of him by the coat and told him to come in, and he said, 'She pulled my coat and I went in there,' and he said, 'After I got in there she kept feeling around my pants, and around the back of my pants.' He said she took his pocketbook out of his back pocket and put it back in, and he showed me the empty pocketbook."

The foregoing statement was received as original evidence. If believed by the jury, it would have warranted the conclusion that the injured party went into the appellant's room voluntarily and that there was no actual or threatened violence to his person antecedent to the robbery. The appellant testified that the injured party was in her room but denied that she took his money and declared that she did not forcibly push him up the steps to her door. She said that she was sitting in her window and called to Leiser, and he came voluntarily into her room. Leiser admitted that he did not discover that his money was gone until he left,

and did not know when it was taken. According to his testimony, he found that his pocketbook was cross-ways in his back pocket, and, upon making an examination, he found that $80 had been taken therefrom.

The actual or threatened violence to the person antecedent to the robbery is a distinguishing element between "robbery" and "theft". Reese v. State, 91 Texas Crim. Rep., 457, 239 S. W., 619. The degree of force is immaterial as long as it is sufficient to compel one to part with his property. Rylee v. State, 90 Texas Crim. Rep., 482, 236 S. W., 744. One of the ingredients of theft from the person is that the theft must be "committed without the knowledge of the person from whom the property is taken, or so suddenly as not to allow time to make resistance before the property is carried away." Article 1438, P. C., 1925. Where force is used, the offense is robbery and not theft from the person. Gallagher v. State, 34 Texas Crim. Rep., 306, 30 S. W., 557. We are not prepared to say, after reviewing the testimony, that the version of the injured party given upon the trial, if believed by the jury, would not warrant the conclusion that the appellant took the property by use of force. On this question, however, we entertain grave doubt. The opinion is expressed that the res gestae statement of the injured party, testified to by the officer, when considered in connection with the appellant's testimony, would have justified the jury in concluding that no force was used. The jury might have believed from the facts in evidence that the appellant took the property without the knowledge of the injured party, no antecedent force being present. In the latter event, the offense was theft from the person and not robbery. If the appellant was guilty of theft from the person, she should have been acquitted on the indictment presented against her, namely, robbery by assault. The issue having been raised by the testimony, the court should have instructed the jury, in substance, to acquit appellant if they had a reasonable doubt that she committed an assault upon the injured party. Some doubt is entertained touching the identity of the alleged offense; that is to say, whether robbery or theft from the person. The writer does not feel satisfied that the conviction should be upheld on this appeal. Because of the peculiar circumstances attending the transaction, the apparent conflict between the res gestae declaration of the injured party and his testimony given upon the trial, together with the serious question as to the identity of the offense (assuming that one was committed), the writer is of the opinion that the state's motion for a new hearing should be overruled.

*Overruled.*

LATTIMORE, Judge, dissenting.—I cannot agree to the disposition made of this case by the overruling of the state's motion for rehearing. The exceptions to the court's charge were not apparently presented to the trial court, and are not approved by him, but bear this significant

notation apparently made by the clerk of the trial court: "Filed March 20, 1930, as of date February 11, 1930." There is no bill of exception bringing forward any exceptions to the charge. The two special charges which appear in the record bear no certificate, and make no showing as to when presented to the court below, and the refusal of same is not complained of by any bill of exception, and same can not be considered by this court.

I cannot assent to this court's right to interfere on the facts and reverse, when same show that a man holding a responsible position, having the apparent confidence of his employers, acting in direct pursuance of their instructions at the time of the occurrence forming the basis of this prosecution, who swears to the fact of an assault upon him and the taking of his money by this negro prostitute, and who immediately appealed to the authorities and gave testimony before a jury which believed him, and a court who heard and saw the witnesses, and is in a far better position than this court is to judge of their credibility,—who doubtless knew the officer who testified to the statement made by the prosecuting witness, contrary to the testimony given by said witness upon this trial,—which officer, according to prosecuting witness, refused to search either the defendant or her house on the occasion of the alleged robbery in order to try to recover the stolen money.

Even if the statute did not make the jury the judges of the credibility of the witnesses and the weight of their testimony, I could not believe, in the light of the testimony in this record, that a man with his wife and little child would go from Galveston to Houston in the morning, take quarters at one of the best hotels in the city, leave there at once to go see a customer, the route to whose place took him through the negro quarters, and that such man would voluntarily go into the room of a negro prostitute and have carnal knowledge of her, and go at once outside and raise a hue and cry that he had been robbed,—thus initiating a matter of disgrace to himself and his family, his reputation and standing, and which would probably cause him to lose his position. This man testified that he was in the street passing the woman's place, and that she caught hold of him and started scuffling with him, and before he could prevent her she had backed him in her door and had reached in his pocket and taken his money; that he did not miss it, but his clothes were torn loose, and that when he got about ten feet away he discovered his money was gone. He said he at once ran back, hit on the front door, and when the woman came he demanded his money. She called him a damned liar, and when he said he would get a policeman she said get one, she said she would tell him he stayed with her, which was what she did. The policeman called refused to search for the money, but let the woman go back in her house.

It is suggested in the opinion of my Brother Morrow that the court

should have charged the jury to acquit if they had a reasonable doubt that the woman assaulted prosecutor. The court told the jury that before they could convict they must believe beyond a reasonable doubt the money was taken by means of an assault. Such complaints are not properly before this court for criticism in the absence of some exceptions taken to the charge.

I cannot agree to this reversal, and respectfully record my dissent.