WILLIE MAE DARRETT AND GRACE HAYNES V. THE STATE.

No. 19273.   Delivered January 19, 1938.
Rehearing denied February 23, 1938.

The opinion states the case.

*Weslow, Beadle & Keilin,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is robbery by assault; penalty assessed at confinement in the penitentiary for five years.

The alleged injured party, J. R. Miller, testified that he was sixty-three years of age; that he was afflicted with high blood pressure, and that he earned his livelihood by raising and selling chickens.

On the day of the alleged offense, he took some chickens to Houston for the purpose of selling them. While engaged in that

enterprise he was approached by the appellant, Willie Mae Darrett, who said she wanted to buy a chicken and asked appellant to deliver it to her home which was near by. She accompanied Miller by standing on the fender of his truck. Upon reaching her home, she told Miller that her mother was sick and asked him to bring the chicken to the house. As Miller got to the front door, the appellant threw her hand in his pocket. By this time the codefendant, Grace Haynes, appeared and grabbed Miller by his right arm. A scuffle ensued during which Willie Mae Darrett took two pocketbooks from Miller's left pocket while Grace Haynes held him. The two women then ran to the back end of the room, opened a door and went in. After removing the money from the pocketbooks the appellants threw them at Miller from across the room and said: "Get out of here." According to Miller, the two pocketbooks contained about $5.00 or $6.00 in silver and between $35.00 and $40.00 in currency. Miller testified that he went to the appellants' house for the purpose of delivering the chicken and for no other purpose. He said he had never seen either of the appellants until the time he was robbed by them.

The appellant, Willie Mae Darrett, testified that she saw Miller on Lyons Avenue on the corner of Hill Street; that he was fixing some crates in the back of his truck at the time. As she was passing his truck, Miller accosted her and asked where she was going. She said she was going home and Miller asked to go home with her, to which she agreed. She got in his truck and rode with him to her home. Upon reaching her home, Miller said he would bring a chicken with him so as to make it appear that he was making a sale. They went into the bedroom and there engaged in the act of sexual intercourse for which Miller paid her fifty cents. According to the appellant, as Miller was pulling up his trousers, he "hit himself" and then grabbed her. A scuffle ensued. The appellant, Grace Haynes, then appeared and asked Miller what was the matter. He replied that the appellant, Willie Mae Darrett, had his purse. The purse was later found on the floor. It was picked up by the appellant and given to Miller. He then picked up his chicken and went on out. Appellant denied that she took Miller's money. She testified that Miller was drunk at the time he came to her house. She denied hitting Miller or holding him in any way. Appellant said that when she heard that the officers were looking for her, she went to the police station and surrendered. She admitted in her testimony that she was a common prostitute.

The appellant, Grace Haynes, testified that she knew Miller; that she had seen him a week before the date of the occurrence

upon which the prosecution is based. On the day in question, she saw Miller in the room with Willie Mae Darrett. He was holding on to his pants with one hand and was telling her that she wasn't going out of the room. Willie Mae Darrett did not have on any clothes at the time. Grace Haynes asked Miller what was wrong, and he replied that Willie Mae Darrett had his purse. The purse was finally found on the floor near the bed. It was picked up and handed to Miller. After Miller had buttoned up his clothes, he picked up his chicken and walked out. Grace Haynes admitted on cross-examination that she was a common prostitute; that Miller came there and "filled a date" with this other woman. She denied holding Miller at any time. She said she did not help take his money out of his pocket; that neither of them took any money from Miller.

J. G. Irwin, a police officer of Houston, testified that he had occasion to see Miller on the day of the alleged robbery; that he was in company with Miller for about an hour or more and that Miller was perfectly sober at that time.

Miller testified in rebuttal that the appellant, Willie Mae Darrett, did not get in his truck but "just hung on the side." When he stopped his truck at her house, she said: "Come over here, and I will pay you; bring the chicken." Miller walked to the porch and stopped. She then put her hand in his pocket, and Grace Haynes grabbed his right arm. Miller said he could not get loose until they had taken both purses out of his pocket. From his testimony we quote:

"The reason I let those women have my money and pocketbooks is they overpowered me. I couldn't help myself. It was impossible for me to get loose from them. * * * I worked until I gave out trying to get loose from the negroes, and when I gave out, they got my money."

Miller denied having had intercourse with either of the appellants, and stated that he had never "fooled with niggers" at any time. He also stated that he had never seen either of the appellants until the day he was robbed by them.

The only question presented for review is the sufficiency of the evidence, the substance of which has been set out above.

In support of the contention that the facts do not reveal a case of robbery, counsel for appellants cites, among others, the case of Harris v. State, 118 Texas Crim. Rep. 597. While the facts in the Harris case, supra, show some similarity to those in the present instance, still it is thought that the evidence in the appeal under consideration is such as to justify the trial court in approving the verdict of robbery rendered by the jury. In other words, the facts in the present case are such as to war-

rant the jury in concluding that Miller's property was taken by force, which would characterize the offense as robbery. The evidence shows that Miller was a man over sixty years of age; that he was afflicted with high blood pressure; that both appellants were common prostitutes and were about twenty years of age; that one of the appellants held Miller by his right arm while the other grabbed the pocketbooks from his pocket. It is true that there is some conflict in the testimony of the witnesses who testified upon the trial. However, the case was submitted to the jury upon the conflicting issues and resolved by them in favor of the State. The jury are the exclusive judges of the facts proven, the credibility of the witnesses, and the weight to be given the testimony, and their verdict, when based on conflicting evidence, is binding upon the appellate court. See Boyd v. State, 59 S. W. (2d) 145; Milner v. State, 69 S. W. (2d) 408; Partain v. State, 91 S. W. (2d) 34; Hodge v. State, 56 S. W. (2d) 871.

Deeming the evidence sufficient to sustain the conviction, and perceiving no error justifying a reversal, the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, JUDGE.—Appellants' attorney has filed a vigorous motion for rehearing herein in which he insists that the evidence in this case is so contrary to human experience, and so fantastic that it does not comport with human conduct and reason, and for that failure this cause should be reversed and remanded.

He quotes many cases ostensibly in support of his proposition. Practically all of them are rape cases with the exception of the Harris case, 39 S. W. (2d) 888, which was discussed in the original opinion.

In rape cases resistance and outcry are often looked to to see if there was a failure of consent, and continued silence, or a claimed situation and circumstances detailed at the scene of the crime sometimes takes a position of such great incredibility as to not only not comport with human experience, but also to cause such a stretch of the imagination as to convince one of its virtual impossibility. Such appears to be true in the majority of cases quoted by appellants' attorney in his motion. We find no such a situation presented here. The prosecuting witness was a person who had lived in the country, and on account of physical infirmities he and his wife were living in the city of Houston temporarily with his daughter. Immediately after the alleged assault, he testified that he communicated such fact to a white

man, who promised to inform the police. The appellants also testified that they saw him talking to a white man soon after he left their house. The witness says that he, together with his truck, remained for some time across the street from appellants' house waiting for such police officer, eventually going home, eating his supper, and then going to the police station, where he arrived before dark and sober, so the officer said. We confess our inability to find any such a peculiar set of facts herein as would justify us in saying that such a course of conduct staggers our belief in their truthfulness. We see no other course for the prosecuting witness to have pursued if he was acting in a manner that an ordinary person would and should have acted, taking into consideration all the surrounding circumstances detailed by him at the time of the robbery. He was acting in the only manner that he could have acted within the bounds of reason, so it seems to us, after he had lost his money, in attempting to recover it. That he would report to the police that he had lost his money, when such was not true, and have these women arrested, would seem to be the unreasonable course of conduct; and in order to place such a construction on his conduct, you would have to accept the testimony of appellants, who testified that they gave him his pocketbook, and that it was shut, and that prosecuting witness put it in his pocket without looking in it, and walked out and made no comment relative to being robbed. Such conduct as above ascribed to the witness, in our judgment, does not comport with human experience.

Presiding Judge MORROW in the original opinion herein has gone rather fully into the facts, and we have again gone over the statement of facts carefully, and we do not feel justified in saying that they are not sufficient. The jury has passed upon them fairly, so we think, and we see no reason to disturb its finding.

The motion for rehearing is overruled.