## OLLIE MELTON v. STATE.

No. A-8752. April 19, 1935.
Rehearing Denied May 17, 1935.
(47 Pac. [2d] 195.)

58

John T. Levergood, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

EDWARDS, J.   Plaintiff in error, hereinafter called defendant, was convicted in the district court, Pottawatomie county, of manslaughter in the first degree and his punishment fixed at twenty years in the state penitentiary.

On the date charged defendant shot one Virgil Coffey, inflicting a wound from which he died two days later.   On

the day after the shooting defendant surrendered to the sheriff. Following the death of Coffey, charges of murder were filed, a preliminary held, and final trial, with the result stated. Defendant admitted firing the fatal shot and pleaded self-defense.

Defendant first contends the evidence is insufficient to support the judgment. The testimony is substantially that on the date charged one Shorty Alexander and Dan Conn were at Alexander's place making whisky; defendant and deceased came and after a few minutes another person came for some whisky; that defendant said he owed him some money and he was going to collect it and was persuaded by Conn not to mention the matter. An argument ensued between defendant and deceased with reference to the debt, in which deceased made some insulting remarks to defendant. In a very short time thereafter the shooting occurred. Two witnesses were in the immediate vicinity, but no one seems to have seen the actual shooting. A former convict, who had served at the same time as defendant on a former conviction, testified that while in the penitentiary defendant made threats against deceased. Mrs. Beulah Short, a bootlegger, testified that defendant visited her place twice during the evening and night following the shooting, that he had two pistols and a shotgun and, among other things, he stated: "He did it too because he figured Virgil Coffey turned him in over a deal," and "if they prosecute me for this or Mrs. Coffey swears against me or any of the witnesses swear against me and don't stick me I will get the witnesses and if they do stick me somebody else will get them," and, "That I told Virgil I shot him and for him not to tell in court I shot him, and if he lived and testified against me I would finish the job." Another witness who saw deceased after the shooting testified that defendant drew a gun on him;

that he had two guns at the time and said he "shot one guy and he was looking for some more of those guys around there." The jailor testified defendant was out on bond and surrendered to the officers to release his bond and when checked in jail had a revolver stuck to his chest with adhesive tape. The dying declaration is in effect that deceased did not have a gun and did not know why defendant shot him.

The rule is well settled that a verdict of a jury will not be disturbed where there is any substantial evidence to support it. Parks v. State, 18 Okla. Cr. 277, 194 Pac. 281; Pickett v. State, 35 Okla. Cr. 60, 248 Pac. 352; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507, 508. This evidence amply supports the verdict.

Complaint is next made that the court permitted the county attorney to cross-examine his own witnesses. It is evident that two of the state's witnesses did not testify as strongly as the county attorney had been led to believe they would and he asked some questions in the nature of cross-examination, but when objected to the objections were sustained and the jury instructed not to consider them. The memory of another witness was permitted to be refreshed to some extent. Where a witness is hostile, suffers a lapse of memory, is evasive, or deceives the party calling him as to what his testimony will be, the court in his discretion may permit a degree of cross-examination. No prejudice to defendant resulted, nor were the questions in the nature of impeachment. Morris v. State, 35 Okla. Cr. 5, 247 Pac. 418, and cases cited.

Defendant next argues error in the introduction of the written dying declaration. The contention is, it was not made under a belief of impending death and that it is not in the exact words of deceased. The court had a pre-

liminary hearing in the absence of the jury touching its admissibility. On the night following the shooting deceased underwent an operation, a deputy sheriff, Brock, the following morning saw deceased in the hospital, he told Brock he was going to die. Brock asked him if he felt like making a statement; deceased said he wanted to talk to the county attorney. The county attorney came. Deceased said, "Ollie Melton has got me." Some one asked him if he was going to get well, he answered, "No." A statement was made, reduced to writing by the assistant county attorney, read back to deceased, who signed it. Brock, Wyatt, and Sillyman testified the statement therein was in substantially the language used by deceased. The preliminary wording was stricken by the court before the declaration was admitted. This court in Elliott v. State, 18 Okla. Cr. 230, 194 Pac. 267, held in syllabus 1:

"Whether or not a purported dying declaration was made by a deceased under the sense of impending death is, first, solely a question for the trial court, in so far as it determines the admissibility of the declaration. In order to be admissible in evidence, it must sufficiently appear by evidence adduced on the preliminary hearing, had in the absence of the jury, that such declaration was made at a time that the deceased was under a sense of impending death, and that the declaration is restricted to facts concerning the facts and circumstances attending the homicide being tried, and, such facts being established, such declaration should be admitted in evidence, notwithstanding that subsequent to making such declaration the deceased expressed the belief that he would get well. It is not necessary that the deceased declare that he is going to die. It is sufficient if the circumstances, including his physical condition, and that he was too weak to sign his name to the declaration and so affixed his mark thereto, and that he four days after making such declaration died from the infliction of the wound to which said declaration relates, show that at the time of making such declaration he

believed he was going to die, and renders said purported dying declaration admissible in evidence."

In Poling v. State, 12 Okla. Cr. 27, 151 Pac. 895, 899, Ann. Cas. 1918 E, 663, it is held:

"It is enough if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proven by the express language of the declarant or be inferred from his evident danger."

See Hawkins v. U. S., 3 Okla. Cr. 651, 108 Pac. 561; Morris v. State, 6 Okla. Cr. 29, 115 Pac. 1030; Dick v. State, 21 Okla. Cr. 146, 205 Pac. 516.

If a dying declaration has been read to and approved by deceased, it need not be in his exact words. In Updike v. State, 9 Okla. Cr. 124, 130 Pac. 1107, this court held:

"Where a dying declaration has been reduced to writing, and has been read over to and approved and signed by the deceased, the fact that it may not be in the exact language used by the deceased will not render it inadmissible; provided, the language used is substantially the same as that used by the deceased. * * *

"Although a statement reduced to writing is not in the exact language used by the deceased, yet, if it clearly appears from all of the testimony in the case that the statement was made under circumstances rendering it admissible as a dying declaration and it was read over to and approved and signed by the deceased, it will be admissible in evidence."

See further State v. Kindle, 47 Ohio St. 358, 24 N. E. 485.

Counsel raises other questions which are not of sufficient importance to require discussion, but they have all been carefully considered by the court. We find no substantial error.

The case is affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.